UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANCE WILLIAMS, CDCR #AG-2394,<br><br>                                        Plaintiff,<br>vs.<br><br>SERGEANT HAMPTON, et al.,<br>                                       Defendants. | Case No.: 3:19-cv-1332-CAB-WVG<br><br>**ORDER:**<br><br>**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2]**<br><br>**AND**<br><br>**2) DISMISSING CLAIMS AND DEFENDANTS FOR FAILING TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED** |

**I.    Procedural Background**

Lance Williams ("Plaintiff"), a prisoner incarcerated at California Men's Colony located in San Luis Obispo, California, and proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983 on July 17, 2019. (*See* Compl., ECF No. 1.) Plaintiff did not prepay the civil filing fee required to commence a civil action at the time he filed his Complaint; instead, he filed a certified copy of his prison trust account statement which

1

the Court liberally construed as a Motion for Leave to proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

On September 13, 2019, this Court reviewed Plaintiff's Complaint as well as his litigation history and denied his Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(g). (*See* ECF No. 5.) The Court identified seven prior federal civil actions and appeals[1] filed by Plaintiff in federal court while he was incarcerated that were dismissed as frivolous or for failing to state a claim, and further found his Complaint contained no plausible allegations to suggest he faced "imminent danger of serious physical injury" at the time he filed it. (*See* ECF No. 5 at 4-7.) Therefore, the Court dismissed Plaintiff's case without prejudice based on his failure to prepay the filing fees required by 28 U.S.C. § 1914(a). (*Id.* at 7.)

Plaintiff appealed, and on April 2, 2020, the Ninth Circuit reversed this Court's IFP determination and remanded the case for further proceedings. (ECF No. 11.) The case was re-opened for further proceedings consistent with the Ninth Circuit's judgment.

## II. Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[2] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). However,

---

[1] A review of PACER demonstrates that Plaintiff has filed thirty-six (36) civil rights lawsuits in the Central, Eastern, and Southern Districts of California and twenty-five (25) appeals in the Ninth Circuit Court of Appeals. *See* www.pacer.gov (website last visited May 1, 2020.)

[2] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

prisoners who are granted leave to proceed IFP remain obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, __ U.S. __, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether their action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) also requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for ... the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

Plaintiff has submitted a copy of his CDCR Inmate Statement Report as well as a Prison Certificate completed by a trust account official at the Richard J. Donovan Correctional Facility ("RJD"). (*See* ECF No. 2) 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These documents show Plaintiff had an available balance of zero at the time it was filed. (*See* ECF No. 2 at 1.)

Therefore, the Court now **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2) and assesses no initial partial filing fee pursuant to 28 U.S.C. § 1915(b)(1). *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.");

*Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay ... due to the lack of funds available to him when payment is ordered."). However, the Court will direct the Secretary of the CDCR, or his designee, to collect the full balance of the $350 total fee owed in this case and forward installments to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(1).

**III. Screening Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)**

    A.    <u>Standard of Review</u>

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint also requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

B.  Factual Allegations

On April 23, 2019, Plaintiff "went out to court for a hearing on his criminal case regarding his false imprisonment." (Compl. at 6.) Plaintiff alleges he was "informed by multiple inmates" that his name was being "thrown around" by Defendant Sophie Schmell. (*Id.*) Schmell was purportedly informing inmates that Plaintiff had "given her a homework assignment that contained over familiar content," along with a "note that was sexual." (*Id.*) Plaintiff claims Defendants Schmell, Sergeant Lewis, and Correctional Officer Silva "orchestrated in retaliation" when they issued a Rules Violation Report ("RVR") "against Plaintiff to cause Plaintiff harm." (*Id.*) As a result of the issuance of the RVR, Plaintiff's sentence was extended, and he was denied "early parole" under Proposition 57. (*Id.*) Plaintiff claims the RVR had "numerous fabrications which can and will be provided in [the] discovery process." (*Id.* at 7.)

Plaintiff alleges he was retaliated against due to the "multiple 602 grievances against numerous [RJD] staff," along with the "5 lawsuits that are active against [RJD] staff" and include Defendants Lewis and Silva. (*Id.* at 6.) Plaintiff further claims Defendant Schmell's "motives stem from Plaintiff denying [Schmell's] sexual advances." (*Id.*) Plaintiff alleges Schmell's "found out" Plaintiff was "illegally incarcerated and was looking to gain a large substantial amount of funds." (*Id.* at 6-7.) He claims Schmell

became "more and more aggressive" as "her time for her internship neared an end." (*Id.* at 7.)

Defendant Lieutenant Gonzalez was the hearing officer at Plaintiff's disciplinary hearing, Defendant Correctional Officer Ramirez was the assigned staff assistant, and Defendant Correctional Officer Erickson was also present. (*See id.* at 8.) Plaintiff claims Gonzalez "deprived Plaintiff opportunity to call witnesses and present documentary evidence." (*Id*) Plaintiff contends that the "written statement as to the evidence relied upon" was not actually supported by any evidence. (*Id.*) Plaintiff also claims he was not told about the hearing and therefore, he "was not in attendance." (*Id.*)

Plaintiff alleges as a result of this disciplinary hearing his "sentence was extended 90 days," along with a "loss of privileges for 90 days." (*Id.* at 9.) In addition, Plaintiff "was deprived of access to law library on multiple important occasions." (*Id.* at 10.) Plaintiff claims Defendant Tiscornia, the Law Librarian, is "invoking an underground regulation not adopted in Title 15" that allows inmates to access the law library during their yard time. (*Id.*) However, Plaintiff alleges that he could not attend the law library due to his loss of privileges for ninety (90) days. (*See id.*) Plaintiff alleges he "received an RVR from Law Library Clerk for something that Plaintiff is entitled to under protected conduct." (*Id.*) Plaintiff alleges Tiscornia issued the RVR in retaliation "for Plaintiff's civil action against her and 602 appeals." (*Id.*)

As a result of the "falsified RVR" Plaintiff's phone privileges were revoked which he claims, "violated his right to access the courts by [preventing] Plaintiff from litigating numerous criminal case appeals and civil actions." (*Id.*) Sergeant Pelodian[3] "gave multiple staff officers" an order that "Plaintiff be allowed access to the housing unit wall phones for legal calls" in the event he lost phone privileges or the "prison is on lockdown." (*Id.*)

---

[3] Sergeant Pelodian is not a named Defendant.

However, Plaintiff claims Defendant Sergeant Hampton "told named c/o staff[4] not to let Plaintiff use phones at all for his legal calls even though many of them knew of the order of Sergeant Pelodian. (*Id*. at 11.) Plaintiff alleges these correctional officers' actions in denying him access to phones "was deliberate and retaliation." (*Id*.) Plaintiff claims that this denial of access to the phones caused his attorney to withdraw from his "false imprisonment" appeal which resulted in a missed court date that was later "rescheduled." (*Id*. at 12.) Plaintiff was not "able to have a subpoena served in his civil action" nor was he "able to conduct discovery." (*Id*. at 12.)

On June 19, 2019, Plaintiff claims he spoke to Defendant Gonzalez about "hiding Plaintiff's hearing." (*Id*. at 13.) Plaintiff alleges Defendant Gonzalez "made a threat to Plaintiff that if he files a lawsuit or appeal grievance, he will have an inmate put in cell or have him moved where Plaintiff will be physically and sexually assaulted." (*Id*.) He further informed Plaintiff that he would "find Plaintiff guilty no matter evidence showed." (*Id*.)

On July 2, 2019, Plaintiff spoke with Defendant Hampton "regarding him not allowing Plaintiff access to phones for his legal affairs." (*Id*.) Hampton purportedly responded that he "doesn't give a fuck about his legal calls because [Plaintiff] is on [loss of privileges] and this is payback for Plaintiff exercising his 1st Amendment rights." (*Id*.)

Plaintiff "attempted to talk to Defendant B. Grijalva about his legal calls" on July 10, 2019. (*Id*. at 14.) Plaintiff claims Defendant Grijalva told him "you don't get no calls." (*Id*.) Plaintiff "replied he will be suing her" to which she allegedly "aggressively approach[ed] Plaintiff and told him he was harassing her, and he better stop, or she would falsify an RVR." (*Id*.)

---

[4] Plaintiff later lists "P. Wingo, Chalmers, Guzman, N. Maruni, N. Erickson, Sgt. Jackson, Sgt. B. Louie, M. Guevara, Rodriguez, C.C.I. B Grijalva, Sgt. Hampton, Sgt. F. Lewis, Litigation Dep't" as the correctional officers who denied him access to the phones. (Compl. at 11.)

On July 11, 2019, Plaintiff went to the "ICC Committee" and claims he is entitled to choose "2 prisons of his choice" but was only given the option to transfer to California Rehabilitation Center ("CRC") or Valley State Prison ("VSP"). (*Id.* at 15.) Plaintiff alleges this was "done in retaliation." (*Id.*) The members of this committee were "CCII A. Taylor, Captain P. Jackson, Warden Pat Covello and Associate Warden John Doe." (*Id.*) Plaintiff claims VSP is not an appropriate placement due to the presence of "valley fever" which would cause him "severe medical sickness and injury." (*Id.*) Plaintiff alleges the "committee panel" disregarded Plaintiff's claims. (*Id.*) He further informed the committee that he had "mental health issues" that required him to be housed "close to family" and in addition, he had an "active hearing in a case." (*Id.*) Plaintiff alleges the committee "all asserted they don't care what Plaintiff wants or what he'll do." (*Id.*) Plaintiff claims the "committee staff failed to intervene" in the denial of access to phone or access to the courts "for all of Plaintiff's active cases violating Plaintiff's [Eighth] Amendment" rights." (*Id.* at 16.)

Plaintiff seeks $100,000 in compensatory damages, $1,000,000 in punitive damages, and "an injunction preventing Plaintiff from being transferred to a prison not of his choice." (*Id.* at 18.)

### C. Due Process and Heck bar

Plaintiff alleges that Defendants Schmell, Lewis, and Silva conspired to issue an RVR that contained "numerous fabrications." (Compl. at 6-7.) Plaintiff was found guilty following a disciplinary hearing conducted by Defendant Gonzalez and as a result, lost good time credits and alleges this resulted in an extension of his criminal sentence. (*See id.* at 6-7, 9.)

Plaintiff also claims that his due process rights were violated because Gonzalez "deprived Plaintiff [the] opportunity to call witnesses and present documentary evidence." (*Id.* at 8.) He further maintains that he was denied the right to be present at the disciplinary hearing and there was no evidence submitted to support the claims

against him. (*See id.*) Plaintiff also alleges that Defendant Tiscornia issued a "falsified RVR" for which he had another disciplinary hearing. (*Id.* at 10.) Following the hearing, Plaintiff lost phone and yard privileges. (*See id.*)

To the extent Plaintiff challenges the validity of the disciplinary proceedings which resulted from Defendants issuing an RVR on grounds that they violated his right to procedural due process, he fails to state a claim upon which § 1983 relief can be granted. *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b).

The Due Process Clause protects prisoners against deprivation or restraint of "a protected liberty interest" and "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) (internal quotation marks omitted). Although the level of the hardship must be determined in a case-by-case determination, courts look to:

> 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez,* 334 F.3d at 861 (quoting *Sandin*, 515 U.S. at 486-87). Only if an inmate has alleged facts sufficient to show a protected liberty interest does the court next consider "whether the procedures used to deprive that liberty satisfied Due Process." *Ramirez,* 334 F.3d at 860.

As currently pleaded, Plaintiff's Complaint fails to allege facts which show that the disciplinary punishment he faced as a result of the RVR subjected him to any "atypical and significant hardship in relation to the ordinary incidents of prison life." *Id.*; *Sandin*, 515 U.S. at 484. Plaintiff's temporary loss of phone privileges and yard time are not deprivations which impose an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Sandin*, 515 U.S. at 483-84; *see Davis v. Small*, 595 Fed.

Appx. 689, 691 (9th Cir. 2014) ("The Due Process Clause itself does not give rise to a protected liberty interest in . . . phone and yard privileges.").

The Court finds Plaintiff's pleading contains no "factual content that allows the court to draw the reasonable inference," *Iqbal*, 556 U.S. at 678, that Defendants' actions "presented a dramatic departure from the basic conditions of [Plaintiff's] indeterminate sentence," or caused him to suffer an "atypical" or "significant hardship." *Sandin*, 515 U.S. at 584-85; *see also Keenan v. Hall*, 83 F.3d 1083, 1088-89 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998).

In addition, to the extent Plaintiff lost good time custody credits that were imposed as a result of his disciplinary conviction, he faces an additional hurdle. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

State prisoners may not challenge the fact or duration of their confinement in a section 1983 action; their remedy lies in habeas corpus instead. *See Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005). Often referred to as the "favorable termination rule" or the "*Heck* bar," this limitation applies whenever state prisoners "seek to invalidate the duration of their confinement--either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody." *Id.* at 81 (emphasis in original). Accordingly, "a state prisoner's § 1983 action is barred (absent prior invalidation) --no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) --if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id.* at 81-82. The favorable termination rule applies to prison disciplinary proceedings if those proceedings resulted in the loss of good-time or behavior credits. *Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997).

Where "success in a ... [section] 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable

termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence." *Muhammad v. Close*, 540 U.S. 749, 751 (2004) (citing *Heck*, 512 U.S. 477; *Edwards*, 520 U.S. at 648). Because Plaintiff contends the punishment imposed as a result of his RVR affects the duration of his sentence (ECF No. 1 at 6), even a well-pleaded due process claim would be barred unless Plaintiff can also show his disciplinary conviction has been reversed, expunged, or otherwise invalidated. *Heck*, 512 U.S. at 486-87.

Here, Plaintiff contends he was convicted based on RVRs that contained "fabricated allegations" and therefore, his claims necessarily imply the invalidity of his disciplinary conviction. *Id.* at 487. Because he has not further alleged his conviction has already been reversed, expunged, or otherwise invalidated, Plaintiff does not state a plausible claim for relief, and his Fourteenth Amendment claims must be dismissed. *Id.*; *see also Coley v. Duffy*, No. 1:13-CV-00912-BAM-PC, 2016 WL 1359799, at *6 (E.D. Cal. Apr. 5, 2016) (dismissing prisoner's § 1983 complaint alleging loss of custody credits and of being falsely charged with a disciplinary violation pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A as barred by *Heck*).

D.   Access to Courts claim

Plaintiff claims throughout his Complaint that Defendants have denied him access to the courts.  Plaintiff claims the loss of phone privileges "violated his right to access the courts by [preventing] Plaintiff from litigating numerous criminal case appeals and civil actions." (Compl. at 10.)  In addition, Plaintiff claims that correctional officers denying him access to the phones caused his attorney to withdraw from his "false imprisonment" appeal which resulting in a missed court date that was later "rescheduled."  (*Id.* at 11.)

Prisoners have a constitutional right to access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). The right is limited to the filing of direct criminal appeals, habeas petitions, and civil rights actions. *Id.* at 354. Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained"

11

(forward-looking access claim) or from the loss of a suit that cannot now be tried (backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 412-15 (2002); *see also Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011) (differentiating "between two types of access to court claims: those involving prisoners' right to affirmative assistance and those involving prisoners' rights to litigate without active interference.").

However, Plaintiff must allege "actual injury" as the threshold requirement to any access to courts claim. *Lewis*, 518 U.S. at 351-53; *Silva*, 658 F.3d at 1104. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348; *see also Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (defining actual injury as the "inability to file a complaint or defend against a charge"). The failure to allege an actual injury is "fatal." *Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) ("Failure to show that a 'non-frivolous legal claim had been frustrated' is fatal.") (quoting *Lewis*, 518 U.S. at 353 & n.4).

In addition, Plaintiff must allege the loss of a "non-frivolous" or "arguable" underlying claim. *Harbury*, 536 U.S. at 413-14. The nature and description of the underlying claim must be set forth in the pleading "as if it were being independently pursued." *Id.* at 417. Finally, Plaintiff must specifically allege the "remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id.* at 415.

Plaintiff's Complaint fails to allege the actual injury required to state an access to courts claim. *See Lewis*, 518 U.S. at 351-53; *Silva*, 658 F.3d at 1104.  Plaintiff's Complaint is devoid of any factual allegations describing the nature of the claims and he offers no more than vague descriptions of the actions he is pursuing.

Moreover, Plaintiff currently has three pending matters in this Court against RJD correctional officials that are still ongoing and have not been dismissed.  A court "'may take notice of proceedings in other courts, both within and without the federal judicial

system, if those proceedings have a direct relation to matters at issue.'" *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (quoting *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002)). See *Williams v. Ortega, et al.*, 3:18-cv-0547-LAB-MDD; *Williams v. Novarro, et al.*, 3:18-cv-1318-DMS-RBM; *Williams v. Navarro, et al.*, 3:18-cv-1581-WQH-KSC.

The Court finds that Plaintiff's Complaint fails to include any "factual matter" to show how or why any of the individual Defendants in this case caused him to suffer any "actual prejudice" "such as the inability to meet a filing deadline or to present a claim," with respect to any case. *Lewis*, 518 U.S. at 348; *Jones*, 393 F.3d at 936; *Iqbal*, 556 U.S. at 678.

Thus, because Plaintiff has failed to allege facts sufficient to show that Defendants caused him to suffer any "actual injury" with respect to any non-frivolous direct criminal appeal, habeas petition, or civil rights action he may have filed, *see Lewis*, 518 U.S. at 354, the Court finds Plaintiff's access to courts claims must be dismissed for failing to state a plausible claim upon which § 1983 relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii), § 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

E. Personal causation

In his Complaint, Plaintiff names as Defendants Wingo, Chalmers, Guzman, Maruni, Louie, Guedala, Rodriguez, Castillo, Vega, Eugenie, and Arzate but offers no specific factual allegations as to what they are alleged to have done or failed to do.

"The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988), citing *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976); *Berg v. Kincheloe*, 794 F.2d 457, 460 (9th Cir. 1986); *Estate of Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999) ("Causation is, of course, a required element of a § 1983 claim.")  A person deprives another "of a constitutional right, within the meaning of section 1983, if he does

an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  Plaintiff has not stated a claim against Defendants Wingo, Chalmers, Guzman, Maruni, Louie, Guedala, Rodriguez, Castillo, Vega, Eugenie, and Arzate because he has failed to allege facts regarding what actions were taken or not taken by these Defendants which caused the alleged constitutional violations.

Therefore, the Court finds that Defendants Wingo, Chalmers, Guzman, Maruni, Louie, Guedala, Rodriguez, Castillo, Vega, Eugenie, and Arzate must be dismissed from this action because Plaintiff has failed to state a claim against any of these Defendants.

F. <u>Claims against Litigation Dep't, All A-Yard Bldg 5, 2nd and 3rd Watch, Staff</u>

Plaintiff's claims against RJD Litigation Department, All A-Yard Building 5; 2nd and 3rd Watch, and "Staff" also must be dismissed.  The CDCR, RJD, and departments of RJD are not "persons" subject to suit under Section 1983 and are entitled to immunity from suit for monetary damages under the Eleventh Amendment.  *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 53-54 (1996); *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001) (citing *Hale v. Arizona*, 993 F.2d 1387, 1398-99 (9th Cir. 1993)); *see also Dragasits v. California*, No. 3:16-cv-01998-BEN-JLB, 2016 WL 680947, at *3 (S.D. Cal. Nov. 15, 2016) ("The State of California's Department of Corrections and Rehabilitation and any state prison, correctional agency, sub-division, or department under its jurisdiction, are not 'persons' subject to suit under § 1983." (citing *Groten*, 251 F.3d at 851)); *Bridgeman v. Education Dep't*, No. 11-cv-0387-JLS-CAB, 2011 WL 2532413, at *1 (S.D. Cal. June 24, 2011) (dismissing claims against the "Education Department" and the "Law Library" of RJD because they are not "persons" and are immune from suit under the Eleventh Amendment).  Accordingly, Plaintiff's claims against these Defendants are dismissed sua sponte for failure to state a plausible claim.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A(b)(1).

### G. Transfer claims

Plaintiff seeks to hold Defendants Taylor, Jackson, Covello and "Associate Warden John Doe" liable because he was not given the opportunity to select the prison, he would be transferred to in his classification hearing. (*See* Compl. at 15.) Plaintiff was given the option to transfer to CRC or VSP. (*See id.*) Plaintiff alleges that both of these options were not viable due to his medical and mental health issues. (*See id.*) However, the record before the Court indicates that Plaintiff was not transferred to either prison. Instead, Plaintiff was transferred to the California Men's Colony. (*See* ECF No. 6.) Thus, these claims are moot. Moreover, Plaintiff does not have a constitutional right to be housed or transferred to the prison of his choosing. *See Olim v. Wakinekona, et al.*, 461 U.S. 238, 244-48 (1983).

### H. Retaliation claims

As for the remaining claims, the Court finds Plaintiff's Complaint contains "sufficient factual matter, accepted as true," to state First Amendment claim for relief against Defendants Tiscornia, Hampton, Gonzalez, Grijalva, and Covello that are "plausible on [their] face," *Iqbal,* 556 U.S. at 678, and therefore, sufficient to survive the "low threshold" set for sua sponte screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) ("Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.").

### I. Leave to Amend

Because the Court has determined that some of Plaintiff's claims survive the sua sponte screening process, the Court will give Plaintiff the opportunity to either: (1) notify the Court of the intent to proceed with his First Amendment claims against

Tiscornia, Hampton, Gonzalez, Grijalva, and Covello; or (2) file an amended pleading correcting all the deficiencies of pleading identified by the Court in this Order. Plaintiff must choose one of these options within thirty (30) days from the date this Order is filed. If Plaintiff chooses to proceed as to his claims against Tiscornia, Hampton, Gonzalez, Grijalva, and Covello only, the Court will issue an Order directing the U.S. Marshal to effect service of his Complaint on Defendants Tiscornia, Hampton, Gonzalez, Grijalva, and Covello and dismiss the remaining claims and defendants.

**IV. Conclusion and Order**

For the reasons explained, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2. **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001;

4. The Court **DISMISSES** all claims against all Defendants, with the exception of the retaliation claims as to Tiscornia, Hampton, Gonzalez, Grijalva, and Covel, for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).

5. The Court **GRANTS** Plaintiff thirty (30) days leave from the date of this Order in which to either: (1) Notify the Court of the intention to proceed with the claims against Tiscornia, Hampton, Gonzalez, Grijalva, and Covel only; or (2) File an Amended

Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete in itself without reference to his original pleading. Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived. *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey*, 693 F.3d at 928 (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

**IT IS SO ORDERED**.

Dated: May 5, 2020

Hon. Cathy Ann Bencivengo
United States District Judge