1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANCE WILLIAMS,<br>CDCR #AG-2394,<br><br>                              Plaintiff,<br><br>            vs.<br><br>SERGEANT S. HAMPTON, et al.,<br><br>                              Defendants. | Case No.:  3:19-cv-1332-CAB-WVG<br><br>**ORDER:**<br><br>**(1)  DISMISSING CLAIMS AND DEFENDANTS FOR FAILING TO STATE A CLAIM AND AS FRIVOLOUS; AND**<br><br>**(2) DIRECTING USMS TO EFFECT SERVICE OF FIRST AMENDED COMPLAINT ON REMAINING DEEFENDANTS** |

### I.      Procedural Background

Lance Williams ("Plaintiff"), a prisoner incarcerated at California Men's Colony ("CMC") located in San Luis Obispo, California, and proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983 on July 17, 2019. (*See* Compl., ECF No. 1.) Williams did not prepay the civil filing fee required to commence a civil action at the time he filed his Complaint; instead, he filed a certified copy of his prison trust account

statement which the Court liberally construed as a Motion for Leave to proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

On September 13, 2019, this Court reviewed Plaintiff's Complaint as well as his litigation history and denied his Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(g). (*See* ECF No. 5.) The Court identified seven prior federal civil actions and appeals[1] filed by Plaintiff in federal court while he was incarcerated that were dismissed as frivolous or for failing to state a claim, and further found his Complaint contained no plausible allegations to suggest he faced "imminent danger of serious physical injury" at the time he filed it. (*See* ECF No. 5 at 4-7.)  Therefore, the Court dismissed Plaintiff's case without prejudice based on his failure to prepay the filing fees required by 28 U.S.C. § 1914(a). (*Id.* at 7.)

Plaintiff appealed, and on April 2, 2020, the Ninth Circuit reversed this Court's IFP determination and remanded the case for further proceedings. (ECF No. 11.) The case was re-opened for further proceedings consistent with the Ninth Circuit's judgment.

On May 5, 2020, the Court GRANTED Plaintiff's Motion to Proceed IFP, DISMISSED claims and defendants for failing to state a claim, and gave Plaintiff the option to file an amended pleading or proceed with his First Amendment retaliation claims against Defendants Tiscornia, Hampton, Gonzalez, Grijalva, and Covello only. (ECF No. 14.)

Plaintiff chose the first option and filed his First Amended Complaint ("FAC") on June 5, 2020.  (ECF No. 15.)

/ / /

/ / /

---

[1] A review of PACER demonstrates that Plaintiff has filed thirty-seven (37) civil rights lawsuits in the Central, Eastern, and Southern Districts of California and twenty-five (25) appeals in the Ninth Circuit Court of Appeals.  *See* www.pacer.gov (website last visited June 25, 2020.)

## II.     Sua Sponte Screening per 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)

### A.     Standard of Review

Notwithstanding Plaintiff's IFP status or the payment of any partial filing fees, the Prison Litigation Reform Act (PLRA") obligates the Court to review complaints filed by all persons proceeding IFP and by those, like Plaintiff, who are "incarcerated or detained in any facility [and] accused of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms or conditions of parole, probation, pretrial release, or diversionary program," "as soon as practicable after docketing," and ideally before the service of process upon any Defendant. *See* 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Under these statutes, the Court must sua sponte dismiss complaints, or any portions thereof, which are frivolous, malicious, fail to state a claim, or which seek damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (§ 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of § 1915[] is to 'ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 907 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

All complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" falls short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

/ / /

3

"When there are well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) ("[W]hen determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff."); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (noting that § 1915(e)(2) "parallels the language of Federal Rule of Civil Procedure 12(b)(6)").

While the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

"Courts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference" to be part of the pleading when determining whether the plaintiff has stated a claim upon which relief may be granted. *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading for all purposes."); *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

### B.   Rule 8

Plaintiff's FAC is twenty-five (25) pages of single spaced, rambling handwritten allegations naming twenty-seven (27) defendants.  In addition, Plaintiff has attached more than one hundred (100) pages of exhibits. (*See* ECF No. 15.)  Thus, the Court finds that Plaintiff's FAC fails to comply with Rule 8.   Rule 8 of the Federal Rules of Civil Procedure provides that in order to state a claim for relief in a pleading it must contain "a short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P.

8(a)(1) & (2).  *See McHenry v. Renne*, 84 F.3d 1172, 1178–80 (9th Cir. 1996) (upholding Rule 8(a) dismissal of complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant"); *Cafasso, United States ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) (citing cases upholding Rule 8 dismissals where pleadings were "verbose," "confusing," "distracting, ambiguous, and unintelligible," "highly repetitious," and comprised of "incomprehensible rambling," while noting that "[o]ur district courts are busy enough without having to penetrate a tome approaching the magnitude of *War and Peace* to discern a plaintiff's claims and allegations.").

      C.    <u>Plaintiff's Factual Allegations</u>

      On April 13, 2019, Plaintiff "went out to court for a hearing."  (FAC at 7.)  When Plaintiff returned to Richard J. Donovan ("RJD"), he was "informed by many inmates his name was being thrown around" by Defendant Schmell.  (*Id.*)  Plaintiff claims Schmell told other inmates that he had returned a "homework assignment" to her that contained "overfamiliar content."  (*Id.*)  He further claims Schmell told other inmates that Plaintiff was a "tree jumping pedophile night stalker [racial epithet]."  (*Id.*)  Plaintiff also alleges that she "told her class of inmate students that if he is found guilty of RVR [Rules Violation Report] she [would be] forced to write Plaintiff up and he should be taught a lesson by being nailed to the stake."  (*Id.*)  Plaintiff claims that Schmell's "class of students vowed to get Plaintiff if he was found guilty of [the] RVR because of their great respect for Schmell."  (*Id.*)

      Plaintiff contends Schmell "authored the RVR in retaliation orchestrated by Sergeant F. Lewis and C/O A. Silva to cause Plaintiff atypical and significant hardships" by having "more time being added to his sentence, [and] giving the Board of Parole ammunition to use the RVR to deny Plaintiff early release."  (*Id.*)  Plaintiff claims he was "labeled a stalker by prisoners and assaulted," lost privileges and was not able to "participate in any positive programming."  (*Id.*)

/ / /

Plaintiff alleges Silva told him that if Plaintiff "would have kept [Silva] and Lewis's names out of [Plaintiff's] appeals and wasn't having everyone served with lawsuits," he would not be a "victim of reprisal." (*Id.* at 8.) Silva told Plaintiff they would have "let it slide" and they "didn't give a fuck about that little bitch." (*Id.*) Plaintiff has "602 appeal grievances against Lewis and Silva and 5 active lawsuits that include Lewis and Silva." (*Id.*)

Plaintiff claims that the actions by Schmell "stem from Plaintiff denying [Schmell's] sexual advances towards him to obtain a personal relationship." (*Id.*) Plaintiff further claims that Schmell "found out" that Plaintiff was "illegally incarcerated and was looking to gain a large substantial amount of funds." (*Id.*) He claims Schmell became "more and more aggressive" as "Plaintiff's court date neared" and she made "threats of things she would do if Plaintiff didn't accept her advances." (*Id.*)

Plaintiff alleges the RVR "authored by Schmell" and "reviewed and approved" by Silva and Lewis "had numerous fabrications." (*Id.* at 9.) Plaintiff claims that the disciplinary hearing was presided over by Senior Hearing Officer Lieutenant Gonzalez "without Plaintiff present." (*Id.*) Plaintiff claims Gonzalez "did not follow protocol when an inmate is not present" and argues Gonzalez "should have suspended hearing" and "inquire" why Plaintiff was not present. (*Id.*) This was not done "showing [Gonzalez] was not an impartial hearing officer." (*Id.*)

Gonzalez and Correctional Officer Ramirez, and Correctional Officer Erikson "deprived Plaintiff his opportunity to call witnesses and present documentary evidence at hearing." (*Id.* at 9-10.) Erikson purportedly told Ramirez that Plaintiff "refused to attend hearing." (*Id.* at 10.) However, Plaintiff claims he "NEVER" refused to come to the hearing because he was "'NEVER' told a hearing was taking place." (*Id.*) He further claims Ramirez "falsified" documentation indicating that Plaintiff "refused to sign a waiver" of his right to appear at his hearing. (*Id.*) Plaintiff alleges there was "no written

statement as to the evidence relied upon to find Plaintiff guilty." (*Id.*) Moreover, the "decision was not supported by a preponderance of evidence." (*Id.*)

Plaintiff contends that Gonzalez "adopted Schmell's and Silva's accounts made in the RVR report to find Plaintiff guilty which is illegal." (*Id.*) When Plaintiff purportedly discovered that his "hearing was held without him," he submitted a "22 form request" to Ramirez. (*Id.*) Ramirez told Plaintiff "we already held your hearing, Erikson said you refused." (*Id.* at 10-11.) Plaintiff filed an appeal that "was granted due to the high multiple amounts of due process violations." (*Id.* at 11.) Ultimately, the RVR was "reissued/reheard due to the RVR not being issued in 15-day timeframe." (*Id.*)

Plaintiff's second hearing was held, and Plaintiff was found "not guilty" purportedly "due to the RVR being falsified and numerous due process violations." (*Id.*) However, Plaintiff claims due to the loss of privileges penalty he received following the first hearing, it "caused him to lose his attorney for his criminal appeal case." (*Id.*) Plaintiff also alleges he was denied "yard time" for ninety days which "deprived him of opportunity to get needed exercise outside his cell." (*Id.* at 12.) In addition, Plaintiff claims he was "deprived access to [the] law library on multiple occasions." (*Id.* at 13.) As a result, Plaintiff claims he was unable to "meet filing deadline to present a claim on a habeas corpus petition" and he had civil rights cases dismissed "due to statute of limitations." (*Id.*)

Plaintiff alleges Defendant Tiscornia was "invoking an underground regulation, not adopted in Title 15, that inmates can only attend law library during their yard time." (*Id.* at 14.) Plaintiff claims he could not go to the law library for ninety (90) days because of the" temporary loss of yard privileges which occurred from May 23, 2019 to August 23, 2019." (*Id.*) Plaintiff "received an RVR" from Tiscornia "for trying to go to law library." (*Id.*) Plaintiff claims that Tiscornia issued this RVR in retaliation for "Plaintiff's 602 appeals and civil actions already filed against Tiscornia." (*Id.*)

Sergeant Poladian[2] "gave named Defendant staff officers [an] order and notice that Plaintiff be allowed to access the housing unit wall phones to make his legal calls upon his request." (*Id.* at 16.)  Plaintiff and his attorney "submitted required letterhead to Litigation Dep't Staff Connie and McGuirre" who told them they "would make the arrangements for them to converse regularly." (*Id.*)  However, Plaintiff claims "they never made the arrangements and gave Plaintiff's attorney the run around." (*Id.*)

Plaintiff alleges he told Sergeant Hampton about his need to have access to the phones but claims Hampton told him "I don't give a fuck, figure it out." (*Id.* at 17.) Hampton also purportedly told "all named staff not to let Plaintiff get on housing unit phones at all for any legal calls" for the time frame that Plaintiff lost privileges. (*Id.*)

Plaintiff was denied phone access from May 23, 2019 to August 21, 2019. (*See id.*)  Plaintiff claims he asked "every day" to use the phones. (*Id.*)  Plaintiff alleges Defendants Wingo, Chalmers, Guzman, Maroki, Erikson, Jackson, Louie, Guevara, Rodriguez, and Lewis all denied him the use of the phones when requested by Plaintiff. (*See id.*)

Plaintiff had a conversation with Lieutenant Gonzalez on June 19, 2019 regarding Gonzalez purportedly holding a disciplinary hearing without Plaintiff being present at the hearing. (*See id.* at 21.)  Plaintiff claims Gonzalez "made a threat" to Plaintiff that if he "files a lawsuit or grievance" he will move an inmate into Plaintiff's cell to cause him to by "physically or sexually assaulted." (*Id.*)

On July 10, 2019, Plaintiff claims he spoke with Grijalva about his "legal call access." (*Id.* at 22.)  Plaintiff alleges that Grijalva told him "you don't get no calls or have any." (*Id.*)  He further claims that Grijalva "told [Plaintiff] he was harassing her, and he better stop, or she would falsify an RVR" against him. (*Id.*)

---

[2] Sergeant Poladian is not a named Defendant.

Plaintiff appeared before the ICC committee on July 11, 2019.  (*See id.* at 23.)  The committee was comprised of Defendants Taylor-Garcia, Jackson, and Covello.  (*See id.*)  Plaintiff claims he was "entitled" to be transferred to one of two prisons "of his choice."  (*Id.*)  Plaintiff chose the California Rehabilitation Center ("CRC") "to be close to his family" and was "deprived of opportunity to choose a second prison" after requesting California Institution for Men ("CIM") as his "second choice."  (*Id.*)  Plaintiff claims Covello, "in retaliation," told Plaintiff that he was going to be sent to Valley State Prison ("VSP").  (*Id.*)  However, Plaintiff claims he is "restricted" from being transferred to VSP because it would "cause him severe medical sickness being susceptible to Valley Fever sickness."  (*Id.*)

Plaintiff acknowledges that he was not transferred to VSP and instead claims he was ultimately transferred to CMC where "he is currently suffering many constitutional, civil rights violations."  (*Id.* at 24.)  Plaintiff also claims that he was "sexually assaulted by an officer at CMC and was illegally placed in administrative segregation."  (*Id.*)

Plaintiff $100,000 in compensatory damages "per Defendant," $500,000 in punitive damages, and an "injunction preventing Plaintiff from being transferred to a prison not of his choice."  (*Id.* at 26.)

D.   Waived Defendants

In the Court's May 5, 2020 Order, Plaintiff was cautioned that any "[d]efendants not named and any claims not re-alleged" in his FAC would be deemed waived.  (May 5, 2020 Order at 17 citing S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").)

In Plaintiff's FAC, he no longer names John Doe, Associate Warden, C/O Litigation Dep't, All A-Yard Bldg 5; 2nd and 3rd Watch, and Staff from 5/23/14 as

Defendants.  Thus, those Defendants are DISMISSED from this action because Plaintiff did not rename these Defendants and for the reasons set forth in the Court's May 5, 2020 Order.

      E.    <u>Retaliation claims against Schmell, Silva, and Lewis</u>

Plaintiff alleges Schmell "authored" an RVR in retaliation against Plaintiff and this was "orchestrated" by Defendants Silva and Lewis.  (FAC at 7.)  Plaintiff alleges Silva told him the RVR would not have been issued if Plaintiff "had kept [Silva] and Lewis' names out of [Plaintiff's] appeals and wasn't having everyone served with lawsuits."  (*Id.* at 8.)  Plaintiff claims he filed several grievances against Defendants Silva and Lewis, along with five pending lawsuits.  (*See id.*)  Plaintiff claims that Schmell's motivations for issuing an RVR against Plaintiff "stem from Plaintiff denying [Schmell's] sexual advances towards him."  (*Id.*)  Plaintiff claims these purported "advances" were made to develop a "personal relationship" with him because Schmell "found out" Plaintiff was "illegally incarcerated" and was going to gain a "large substantial amount of funds."  (*Id.*)

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).

A retaliation claim has five elements. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). First, Plaintiff must allege that the retaliated-against conduct is protected. *Watison*, 668 F.3d at 1114.[3] Second, Plaintiff must allege Defendants took adverse action against him.[4] *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). Third, Plaintiff

---

[3] The filing of an inmate grievance is protected conduct. *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005).

[4] The adverse action need not be an independent constitutional violation. *Pratt*, 65 F.3d at 806. "[T]he mere threat of harm can be an adverse action...." *Brodheim*, 584 F.3d at 1270.

must allege a causal connection between the adverse action and the protected conduct.[5] *Watison*, 668 F.3d at 1114. Fourth, Plaintiff must allege the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Rhodes*, 408 F.3d at 568 (internal quotation marks and emphasis omitted).[6] Fifth, Plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution...." *Rizzo*, 778 F.2d at 532; *Watison*, 668 F.3d at 1114-15.

As an initial matter, the Court finds that Plaintiff's claims of retaliation as to Schmell fail to state a claim and rise to the level of frivolousness. Plaintiff maintains that Schmell's motivation for retaliating against him was purportedly due to her attempt to engage in a personal relationship with him based on his claims that he would be receiving a large monetary settlement. (*See* FAC at 8.) Plaintiff claims that he denied Schmell's "sexual advances towards him." (*Id.*) However, Plaintiff does not allege that he ever filed a grievance regarding Schmell's alleged actions or ever, at a minimum, verbally threatened to take action against Schmell. *See Entler v. Gregoire*, 872 F.3d 1031, 1039-40 (9th Cir. 2017) (Holding that both "verbal … [and] written … threats to sue fall within the purview of the constitutionally protected right to file grievances.") As set forth above, the first element of a retaliation claim requires Plaintiff to allege that the retaliated-against conduct is protected conduct. *Watison*, 668 F.3d at 1114. Plaintiff allegedly rejecting Schmell's advances, without taking any active steps to engage in protected conduct by filing a grievance or notifying her of an intention to take any action against her, does not rise to the level of "protected conduct." (*Id.*)

---

[5] Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. *Watison*, 668 F.3d at 1114 (citing *Pratt*, 65 F.3d at 808 ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent.")).

[6] "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," *Brodheim*, 584 F.3d at 1269, that is "more than minimal," *Robinson*, 408 F.3d at 568 n.11.

The Court finds Plaintiff's claims of retaliation on the part of Schmell are patently frivolous. A pleading is "factual[ly] frivolous[]" if "the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 25-26 (1992).

"[A] complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact. . .. [The] term 'frivolous,' when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). When determining whether a complaint is frivolous, the court need not accept the allegations as true, but must "pierce the veil of the complaint's factual allegations," *Id.* at 327, to determine whether they are "'fanciful,' 'fantastic,' [or] 'delusional,'" *Denton*, 504 U.S. at 33 (quoting *Neitzke*, 490 U.S. at 328).

Here, the Court finds that Plaintiff's claims of retaliation against Schmell "rise to the level of the irrational or the wholly incredible," *Denton,* 504 U.S. at 33, and as such, these claims require dismissal as frivolous and without leave to amend. *See Lopez v. Smith* 203 F.3d 1122, 1127 n.8 (9th Cir. 2000) (en banc) (noting that if a claim is classified as frivolous, "there is by definition no merit to the underlying action and so no reason to grant leave to amend.").

Therefore, Plaintiff's retaliation claims against Schmell are DISMISSED for failing to state a claim, as frivolous, and without leave to amend.

In addition, while the Court finds that, at this stage of the proceedings, Plaintiff has stated a retaliation claim against Defendant Silva, he has failed to state a retaliation claim against Lewis.  Plaintiff alleges that the RVR was "orchestrated" by Lewis, he offers no other specific factual allegations as to how Lewis was actually involved in the decision to issue the RVR.  (*See* FAC at 7.)  "Because vicarious liability is inapplicable to ... § 1983 suits, [Plaintiff] must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 at 676; *see*

*also Jones v. Community Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even pro se plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" in order to state a claim). "A plaintiff must allege facts, not simply conclusions, t[o] show that [each defendant] was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see also Estate of Brooks ex rel. Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999) ("Causation is, of course, a required element of a § 1983 claim."). Plaintiff alleges no such facts against Defendant Lewis. Thus, Plaintiff's retaliation claims against Defendant Lewis are DISMISSED for failing to state a claim.

F.    Fourteenth Amendment claims against Schmell, Silva, Lewis, Gonzalez

Plaintiff alleges that his Fourteenth Amendment due process rights were violated during his disciplinary hearing. (*See* FAC at 9-10.) Specifically, Plaintiff alleges that he was not present at this hearing which "deprived him of his opportunity to call witnesses and present documentary evidence at [the] hearing." (*Id.*) Plaintiff claims that he was found guilty based on "falsified documentation" and reliance on statements made in the "falsified" RVR report authored by Schmell and Silva. (*Id.*) Plaintiff was "denied yard time" for ninety (90) days. (*Id.* at 11.)

However, Plaintiff also acknowledges that after he filed a grievance, the RVR was "reissued/reheard" due to a finding that there was a high amount of "due process violations" in Plaintiff's first disciplinary hearing. (*Id* at 11.) Following the second disciplinary hearing, Plaintiff was found "not guilty." (*Id.*)

The Fourteenth Amendment provides that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a

13

deprivation of the interest by the government; [and] (3) lack of process.'" *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

A prisoner is entitled to certain due process protections when he is charged with a disciplinary violation. *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-571 (1974)). "Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken." *Id.*

Even if Plaintiff is able to demonstrate that he was deprived of due process by Defendants purported failure to provide *Wolff* protections during his first disciplinary hearing, Plaintiff's own allegations demonstrate that the RVR was re-issued and reheard which resulted in a reversal of the previous guilty finding.  *See* FAC at 11.  Therefore, Plaintiff's claims of due process violations arising from his first disciplinary hearing are moot in light of the grant of a new hearing which resulted in a not guilty verdict.  *See Brown v. Marshall*, 2012 WL 12906131, *9 (E.D. Cal. Mar. 1, 2012) ("[P]laintiff's procedural due process claims related to either his first or second disciplinary proceedings have been rendered moot by the subsequent re-issuing and re-hearing of the rules violation charge against him.")*;Shotwell v. Brandt*, 2012 WL 6569402, at *3 (N.D. Cal. Dec. 17, 2012) (citing *Raditch v. United States*, 929 F.2d 478, 481 (9th Cir. 1991) for the finding that "the remedy for an unfair hearing is another hearing" and finding that "due process was satisfied when the results of the first disciplinary hearing were vacated, [and] the RVR was ordered reissued and reheard.").

Plaintiff does not allege that he suffered any loss of credits or that his sentence was extended as a result of the first disciplinary hearing.  *See Randolph v. Sandoval*, 2019 WL 2410469, *7 (E.D. Cal. June 7, 2019) (Finding no due process violation where "disciplinary proceedings were rendered moot by the subsequent not guilty finding" and

the plaintiff did not lose credits, serve "additional time in segregation," or maintain a "disciplinary record for the alleged offenses after the RVRs were overturned."); *see also*, *Horne v. Coughlin*, 155 F.3d 26, 31, n. 3 (2nd Cir. 1998) (finding the plaintiff's due process claims with regard to his first hearing were rendered null after the findings and penalties were vacated and a new hearing ordered, and plaintiff suffered no loss of good time credits); *Morissette v. Peters*, 45 F.3d 1119, 1122 (7th Cir. 1995) (finding no injury after a due process violation in the plaintiff's first disciplinary hearing was subsequently corrected in the administrative appeals process and plaintiff's sentence was adjusted so that he served no additional time in segregation.)

Thus, Plaintiff's Fourteenth Amendment due process claims arising from his disciplinary hearings are DISMISSED for failing to state a claim upon which relief could be granted.

G.    Access to Courts claims

Plaintiff alleges that Defendant violated his access to the courts when he was denied access to the prison's law library from May 23, 2019 to August 21, 2019. (*See* FAC at 13.) Specifically, Plaintiff alleges that he suffered an "actual injury" when he was prevented from litigating several civil rights cases "because Plaintiff couldn't access library to prepare them to be filed." (*Id.*) In support of his claims that he suffered an "actual injury," Plaintiff lists several cases. (*Id.*)

Prisoners have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977), *limited in part on other grounds by Lewis*, 518 U.S. at 354. Because states must ensure indigent prisoners meaningful access to the courts, *Bounds* held that prison officials were required to provide either: (1) adequate law libraries, or (2) adequate assistance from persons trained in the law. *Bounds*, 430 U.S. at 828. *Bounds* was interpreted to establish "core requirements," and a prisoner alleging deprivation of those core requirements was *not* required to also allege actual injury in order to a state constitutional claim. *See e.g., Sands*

15

*v. Lewis*, 886 F.2d 1166, 1171 (9th Cir. 1989).

However, *Lewis* abolished that approach in 1996; and ever since, in order to state a claim of a denial of the right to access the courts, a prisoner must establish that he has suffered "actual injury," a jurisdictional requirement derived from the standing doctrine. *Lewis*, 518 U.S. at 349. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348 (citation and internal quotations omitted). The right of access does *not* require the State to "enable the prisoner to discover grievances," or even to "litigate effectively once in court." *Id.* at 354; *see also Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (defining actual injury as the "inability to file a complaint or defend against a charge"). Instead, *Lewis* holds:

> [T]he injury requirement is not satisfied by just any type of frustrated legal claim ... *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id.* at 346; *see also Spence v. Beard*, No. 2:16-CV-1828 KJN P, 2017 WL 896293, at *2-3 (E.D. Cal. Mar. 6, 2017). Indeed, the failure to allege an actual injury is "fatal." *Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) ("Failure to show that a 'non-frivolous legal claim had been frustrated' is fatal.") (quoting *Lewis*, 518 U.S. at 353 & n.4).

In addition to alleging an "actual injury," Plaintiff must also plead facts sufficient to describe the "non-frivolous" or "arguable" nature of underlying claim he contends was lost as result of Defendants' actions. *Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002). The nature and description of the underlying claim must be set forth in the pleading "as if it were being independently pursued." *Id.* at 417.

16

A court may take judicial notice of its own records, *see Molus v. Swan*, Civil Case No. 3:05-cv-00452-MMA-WMc, 2009 WL 160937, *2 (S.D. Cal. Jan. 22, 2009) (citing *United States v. Author Services*, 804 F.2d 1520, 1523 (9th Cir. 1986)); *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015), and "'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'" *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (quoting *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002)); *see also United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

Therefore, this Court takes judicial notice of its own records and other court's public records available on PACER.[7]  First, Plaintiff identifies the following civil rights cases in which he alleges he suffered an "actual injury" due to the Defendants' actions alleged in this matter: (1) *Williams v. Villescaz, et al.*, E.D. Cal. Civil Case No. 2:15-cv-01230-CKD; (2) *Williams v. Sharp, et al.*, E.D. Cal. Civil Case No. 2:15-cv-02542-GEB-KJN; (3) *Williams v. DeGeorge*, E.D. Cal. Civil Case No. 2:16-cv-00025-TLN-CKD; and (4) *Williams v. Garcia, et al.*, C.D. Cal. Civil Case No. 2:16-cv-06744-PA-KK.  (*See* FAC at 13.)

Each one of these cases were filed, and judgment was entered against Plaintiff, years before Plaintiff purportedly was denied access to the law library in 2019.  In addition, while Plaintiff filed appeals in some of these actions to the Ninth Circuit, those appeals affirmed the rulings by the district courts at least a year before the claims giving rise to this action were alleged to have happened.

Plaintiff also claims that he was unable to file a timely appeal in *Williams v. Kenner, et al.*, S.D. Cal. Civil Case No. 3:18-cv-01006-AJB-JMA ("*Kenner*") due to

---

[7] *See* www.pacer.gov (website last visited June 25, 2020.)

"lack of access to the prison law library" from May 23, 2019 to August 21, 2019. (FAC at 13.)  A review of the Court's docket in this matter indicates that Plaintiff was denied the right to proceed IFP pursuant to 28 U.S.C. § 1915(g) and judgment was entered on September 14, 2018.  (*See Kenner*, ECF No. 12.)  Plaintiff filed his appeal on March 26, 2019, two months before he claims he was denied access to the prison's law library.  (*See id.*, ECF No. 13.)

Plaintiff also alleges that correctional officers denied his access to the phones for ninety days, as a result of the loss of privileges following his first disciplinary hearing, which purportedly resulted in his inability to communicate with his lawyer.  (*See* FAC at 14-16.)  Plaintiff claims that he suffered an "actual injury" because his "habeas corpus for his criminal appeal No. LA075334" was "deemed untimely."  (*Id.* at 14.)  Plaintiff also claims that he suffered a second "actual injury" when his "habeas corpus for [his] RVR appeal [*Williams v. Kernan,* E.D. Cal. Civil Case No.  2:18-cv-02841 JAM DB ("*Kernan*")]" was also "deemed untimely."  (*Id.*)

As stated above, Plaintiff was denied phone access from May 23, 2019 to August 21, 2019.  (*See* FAC at 17.)  In *Kernan*, Respondent filed a motion to dismiss on December 6, 2019 to which Plaintiff filed a timely opposition on December 27, 2019. (*See Kernan*, ECF Nos. 18, 19.)  The filing of this motion was several months after Plaintiff's phone privileges were restored and Plaintiff was not prevented from filing an opposition.

As for Plaintiff's attempts to file petitions for writ of habeas corpus relating to his criminal conviction in Los Angeles Superior Court, Plaintiff has filed a least thirteen such petitions in the California Court of Appeal, Second District.[8]  Plaintiff began filing these petitions in 2014 and has filed one as recently as June, 22, 2020.  Plaintiff's claims that

---

[8] *See* https://appellatecases.courtinfo.ca.gov/search.cfm?dist=2 (website last visited June 24, 2020.)

his lack of access to the phones for a three-month period in 2019 denied him access to the courts is simply not plausible.

The Court DISMISSES Plaintiff's access to courts claims are DISMISSED as frivolous and for failing to state a claim upon which relief may be granted.

### H. Housing

Plaintiff alleges appeared before the ICC committee on July 11, 2019.  (*See* FAC at 23.)  The committee was comprised of Defendants Taylor-Garcia, Jackson, and Covello.  (*See id.*)  Plaintiff claims he was "entitled" to be transferred to one of two prisons "of his choice."  (*Id.*)  Plaintiff chose the California Rehabilitation Center ("CRC") "to be close to his family" and was "deprived of opportunity to choose a second prison" after requesting California Institution for Men ("CIM") as his "second choice."  (*Id.*)  Plaintiff claims Covello told Plaintiff that he was going to be sent to Valley State Prison ("VSP").  (*See id*.)  However, Plaintiff claims he is "restricted" from being transferred to VSP because it would "cause him severe medical sickness being susceptible to Valley Fever sickness."  (*Id.*)

Plaintiff was not transferred to VSP but instead was ultimately transferred to CMC where "he is currently suffering many constitutional, civil rights violations."[9]  (*Id.* at 24.)  Plaintiff does not have a constitutional right to be housed in the institution of his choice.  *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prisoner administrators' expertise.").

### I. Remaining claims

As to Plaintiff's remaining retaliation allegations against Defendants Silva,

---

[9] Plaintiff has recently filed civil rights actions alleging that his constitutional rights have been violated while housed at CMC and are not part of this action.  *See Williams v. Sabo, et al.*, C.D. Cal Civil Case No. 2:20-cv-01373-PA-KK; *Williams v. R. Farley, et al.*, C.D. Cal. Civil Case No. 2:20-cv-04490-PA-KK.

Tiscornia, Gonzalez, Hampton, and Grijalva, however, the Court finds his FAC contains plausible claims sufficient to survive the "low threshold" set for sua sponte screening as required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *Rhodes*, 408 F.3d at 567-68 ("Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.").

Therefore, the Court will order the U.S. Marshal to effect service upon all the Defendants Silva, Tiscornia, Gonzalez, Hampton, and Grijalva on Plaintiff's behalf. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); FED. R. CIV. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal ... if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.").[10]

## III.    Conclusion and Order

For the reasons explained, the Court:

1.    **DISMISSES** all claims against all Defendants with the exception of Plaintiff's First Amendment retaliation claims against Defendants Silva, Tiscornia, Gonzalez, Hampton, and Grijalva and **DIRECTS** the Clerk to terminate all parties, with the exception of Silva, Tiscornia, Gonzalez, Hampton, and Grijalva, to this matter based on the failure to state a claim against them and as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

2.    **DIRECTS** the Clerk of Court to issue a summons as to Plaintiff's FAC

---

[10] Plaintiff is cautioned that "the sua sponte screening and dismissal procedure is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion that [a defendant] may choose to bring." *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).

(ECF No. 15) upon Defendants Silva, Tiscornia, Gonzalez, Hampton, and Grijalva, and forward it to Plaintiff along with a blank U.S. Marshal Form 285 for each of them. In addition, the Clerk will provide Plaintiff with a certified copy the May 5, 2020 Order granting IFP status, certified copies of his FAC (ECF No. 15), and the summons so that he may serve Defendants Silva, Tiscornia, Gonzalez, Hampton, and Grijalva. Upon receipt of this "IFP Package," Plaintiff must complete the USM Form 285 as completely and accurately as possible, *include an address where each Defendant may be found and/or subject to service* pursuant to S.D. Cal. CivLR 4.1c., and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

3.    **ORDERS** the U.S. Marshal to serve a copy of the FAC (ECF No. 15), and summons upon the Defendants Silva, Tiscornia, Gonzalez, Hampton, and Grijalva as directed by Plaintiff on the USM Form 285s provided to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

3.    **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendants Silva, Tiscornia, Gonzalez, Hampton, and Grijalva, or if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been was served on Defendants or their counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk or which fails to include a

/ / / / /

/ / / / /

/ / / / /

/ / / / /

21

Certificate of Service upon the Defendants, or their counsel, may be disregarded.

**IT IS SO ORDERED**.

Dated:  June 26, 2020

_____
Hon. Cathy Ann Bencivengo
United States District Judge